Case 09-09086    Filed 09/30/11    Doc 72

POSTED ON WEBSITE
NOT FOR PUBLICATION

FILED

SEP 30 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

| | |
|---|---|
| In re<br><br>EDDIE A. JEBRI and<br>WAYLET M. JEBRI,<br><br>       Debtor(s). | Case No. 09-92985-E-7 |
| EFRAIN RAMIREZ,<br><br>       Plaintiff(s),<br>v.<br><br>EDDIE A. JEBRI and<br>WAYLET M. JEBRI,<br><br>       Defendant(s). | Adv. Pro. No. 09-9086<br>Docket Control No. RLA-4 |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**

The court has been presented with a Motion for New Trial in this Adversary Proceeding by the Defendant Eddie A. Jebri ("Jebri"). Proper notice was provided and an opposition filed by Efrain Ramirez, the prevailing Plaintiff ("Plaintiff").

Jebri, seeks a new trial in this adversary proceeding on the basis that he has discovered new evidence. A motion for new trial

is governed by Federal Rule of Bankruptcy Procedure 9023 which incorporates Federal Rule of Civil Procedure 59. The Federal Rule of Bankruptcy Procedure 9023 also supplemented Federal Rule of Civil Procedure 59 by requiring that the motion for a new trial or a motion to alter or amend a judgment be filed not later than 14 days after entry of judgement. A motion is filed when it is delivered into the actual custody of the proper officer. *U.S. v. Lombardo*, 241 U.S. 73, 76-77 (1916).

The Motion seeks a new trial under Rule 59(a)(1) or in the alternative for the court to reopen the judgment under Rule 59(a)(2). The first asserted ground for a new trial is stated to be

> (a) In General.
>
>   (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>
>     (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
>
>     (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Rule 59(a)(1), Fed. R. Civ. P. No points and authorities have been provided to the court as to what grounds exist for granting a new trial in a non-jury case for a suit in equity.

The alternative relief sought is to reopen the judgment pursuant to Rule 59(a)(2), Fed. R. Civ. P., which states,

>   (2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

Again, no points and authorities are provided to the court with respect to when it is appropriate for a court to reopen a judgment and subject the parties to further litigating what had been a decided issue. For both grounds stated, Jebri appears to take it as a matter of faith that a final ruling of the court will be reopened because Jebri wants to present and argue additional evidence.

The Motion asserts that relief is warranted under either Rule 59(a)(1) and (a)(2) because:

a. Page 6 of the Court's Findings of Fact and Conclusions of Law states that it is undisputed that Jebri knowingly sold illegal franchises to the Plaintiff.

b. Jebri believed prior to trial that it was Plaintiff's burden of proof to prove the damages set forth in Plaintiff's Exhibit No. 27. Jebri asserts he was further lulled into complacency based on page 2 of Exhibit 27 listing alleged lost activations while unable to do business during the period of February 2006 through December 2007, because Jebri believed that his numerous Exhibits proved that commissions were paid by Jebri's company, EZ Wireless, for the period from November 2005 through December 2007.

c. Plaintiff provided a July 2005 invoice as evidence of double book keeping by Defendant. Exhibits 22 and 24 submitted by Jebri were generated by the Defendant's software. Exhibit 22 "came from Sprint" which states the full commission payable to Jebri's corporation and Exhibit 24 shows the commission payable from Jebri's

1  corporation to Plaintiff. Based on these, no commissions
2  were owed.
3  d.  Since the trial, Jebri has begun retrieving evidence from
4       Sprint to support Jebri's defense that all commissions
5       have been paid. Jebri asserts that evidence from Sprint
6       shows that commissions are not due.
7  e.  Failure to grant a new trial or reopen the judgment to
8       take the Sprint evidence will result in a great
9       injustice.

The court applies these grounds to Rule 59(a)(1) and (2) to determine whether a new trial should be granted or the judgment reopened. Because Jebri has sought to merely state the grounds and not provide any legal authorities for the proper application of the Rule, he has chosen to make this task more difficult for the court. Shifting the burden of conducting legal research on the court is inappropriate. However, the court will not prejudice Jebri for this shortcoming and issue a final ruling supported by appropriate legal analysis.

**CREDIBILITY OF WITNESS DETERMINED AT TRIAL**

A significant part of Jebri's contention is that he should be believed and not the Plaintiff and Plaintiff's witnesses. The court made extensive filings at trial, expressly determining that Jebri's testimony and exhibits were not credible. Some of the reasons stated by the court as to why Jebri's testimony was not credible included: (1) Jebri electing to only producing his companies business records for the amounts he alleged were due and not what would be corroborating Sprint records which were available to him, (2) Jebri's testimony that he consciously chose to only

4

produce his records since the Plaintiff's dealing were with him and not Sprint (though the commissions were based on amounts paid by Sprint to Jebri's company), (3) the inference drawn by the court that Jebri failed to produce the Sprint records because they would not corroborate the evidence produced by Jebri at trial, (4) Jebri testifying that he sold franchises after being advised by counsel that to do so would be illegal, leading the court to conclude that Jebri would say or do whatever (whether legal or illegal) he believed would advance his financial interests, (5) the selective memory of Jebri when the lack of knowledge worked to his tactical advantage at the trial, and (6) testimony by Zee Tawasha (former business associate of Jebri and former co-CEO of EZ Wireless which did business with Plaintiff) that Jebri's company maintained two sets of books reflecting the commissions due and the EZ Wireless information provided to Plaintiff by Jebri was inaccurate. The court's full findings and conclusions are stated in detail in the record pursuant to Rule 52(a)(1), Fed. R. Civ. P., and Rule 7052, Fed. R. Civ. P.

Though Jebri tries to reargue the issues and contend that the evidence he submitted was better than that presented at trial by Plaintiff and Plaintiff's witnesses (including his former business associate and co-CEO of EZ Wireless), he ignores the court making a determination that Jebri's testimony and evidence was not credible. The court was required to determine which, of the conflict evidence, was more credible.

### PROPER GROUNDS FOR A NEW TRIAL

Though Rule 59(a)(1) and (2) grant the authority to reopen the judgment or grant a new trial, they do not specify the proper

5

grounds for granting such relief in the Rule. The court's analysis begins with a general review of this Rule. As stated in WRIGHT-MILLER-KANE, FEDERAL PRACTICE AND PROCEDURE, § 2803,

> Rule 59 give the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is the judge's right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so...Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial....

In the event of a non-jury trial, a motion for new trial or rehearing should be based upon "manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." *Id.*, § 2804.

### Newly Discovered Evidence

Jebri comes to the court seeking a new trial or to reopen the judgment because after the trial he obtained records from Sprint which he asserts supports his defense. No explanation is offered as to why the records were not produced at the trial, other than the statement in the Motion that Jebri was "lulled into complacency." Making a strategy decision to be complancent with the evidence to be presented at trial is not the basis for finding newly discovered evidence.

A motion for new trial may be granted if there has been a change in the law or facts, or there is newly discovered evidence. *In re Basham*, 208 B.R. 926, 934 (B.A.P. 9th Cir. 1997), *aff'd*, 152 F.3d 924 (9th Cir. 1998). To obtain a new trial based upon newly discovered evidence, Jebri must show that the evidence:

    (1)   existed at the time of the trial,

    (2)   could not have been discovered through due diligence, and

1  (3) was of such magnitude that production of it earlier would
2      have been likely to change the disposition of the case.
3  *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (per
4  curiam).

5  It is not merely sufficient that Jebri steps forward and says
6  that he now has additional evidence to present to the court, which
7  is "new" to the court because Jebri chose not to obtain it during
8  discovery and present it at trial. To prevail on this ground,
9  Jebri must establish that the "new" evidence was discovered after
10 the trial and that through the exercise of due diligence Jebri
11 could not have discovered it earlier. *Defenders of Wildlife v.*
12 *Bernal*, 204 F.3d 920, 929 (9th Cir. 1999).

13 The colloquy between the Plaintiff's counsel and Jebri
14 demonstrates this conscious decision by Jebri not to introduce
15 third-party evidence.

16 Q. [Plaintiff's Counsel], Well, those records all have your
   stationery on them, don't they? It says EZ Wireless on them?
17
18 A. [Jebri]. Yes.

   Q. I'm interested in something that has Sprint on it. Do you
19 have any records that say Sprint? When they send you when I
   get a bill from Sprint, it says Sprint all over it. And it
20 gives me an itemization of the bill.

21 A. The contract between me and Central Valley Communication,
   is not a contract between Sprint and Central Valley
22 Communication. Whatever is sent from Sprint is between EZ
   Wireless, not --
23
   ...
24
   Q. Now, you say you can download any Sprint records because
25 you are the master agent, right?

26 A. Yes.

27 Q. Why didn't you present the Sprint records.

28 A. The - the Sprint record is exactly what's shown on our

7

1  record for Efrain Ramirez [Plaintiff].

2  Q.  How can we verify that?  We don't have the Sprint record.
   We just have the record you made of what you think you owe Mr.
3  Ramirez.  We just have to trust you, is that it?

4  A.  You don't have to trust me.  Efrain Ramirez, if you have
   a complaint about this - this is not his records, he should
5  show me proof of that this is not his records and I owe him
   more money that what I submitted to him every single month.
6
   Q.  Well, Mr. Ramirez doesn't have access to the Sprint
7  records, does he?

8  A.  He has access to his contract.

9  Q.  The contract between you ----

10 THE COURT: Gentlemen, a question will be asked and answer will
   be given. You're not going to get into a
11 running argument.

12 THE WITNESS: Certainly.

13 Q.  At any time did Mr. Ramirez have access to the Sprint
   records of his sales?
14
   A.  No.
15
   Q.  He had to go through you?
16
   A.  Yes.
17
   Q.  Did you ever give him Sprint records of the sales?
18
   A.  The exhibit, all of this activations.
19
   Q.  You gave him your records, didn't you?
20
   A.  I did give him records.  All this record is Sprint
21 Activations.

22 Trial Transacript, Pgs. 124: 22-25, 125:1-7, 131:7-25, 132:1-15,

23 Dkct.50.  Jebri's testimony was clear that he sought only to

24 present his records of the transaction, believing that third-party

25 records irrelevant since the dispute was between Plaintiff and

26 Jebri.

27    As the Plaintiff argues, Jebri cannot meet the second factor.

28 The new evidence consists of records obtained directly from Sprint

8

showing new cell phone activations.  There is no explanation for how this evidence could not have been discovered through due diligence before trial.  At trial, when questioned as to why corroborating evidence of Sprint records was not provided, Jebri asserted that he did not have to produce anything other than his own records.  It is clear from the Motion and supporting affidavits that this is not evidence discovered after trial, but evidence which Jebri was aware of before trial but consciously chose not to present that available evidence to the court.  Presumably, Jebri made the strategy decision believing that his testimony would be so significantly more credible than the Plaintiff's and his former co-CEO.

The court has also carefully reviewed the affidavits provided in support of the Motion.  The only affidavits filed are those of Richard Anderson, the trial attorney, and Diane Denato, paralegal for the trial attorney.[1]  No evidence is presented to indicate that the Sprint records represent evidence that Jebri did not know about and was not available at the time of trial.  Rather, the declarations are consistent with the Motion that no effort was made to obtain the Sprint records until after the court ruled against Jebri, issued its judgment, and Jebri realized that his conscious strategy to not present third-party evidence had failed.

For whatever strategy reason, Jebri chose not to obtain these

---

[1] The statements titled as "affidavits," are not signed or attested to under penalty of perjury. See Fed. R. Evid. 603, Fed. R. Civ. P. 43, and Fed. R. Bankr. P. 9017.  These statements are not evidence.  The Plaintiff objected to these statements on those grounds.  Out of an abundance of caution the court has reviewed the statements, and even if they were a sufficient presentation of testimony under penalty of perjury, they do not support a basis for new trial or to reopen the judgment.

9

records to present at trial, and cannot now claim they are newly discovered after the evidence he chose to present did not carry the day. This is not cause to grant a motion for new trial.

### Finding that Jebri Illegally Sold Franchise

Jebri contends that the court's finding that it was undisputed that Jebri sold a franchise to Plaintiff was a material error. Jebri contends that he admits to selling at least one franchise to another person, but does not admit to selling a franchise to Plaintiff. It was undisputed at trial that Plaintiff entered into an agreement with Jebri's company which was promoted by Jebri. To the extent that Jebri ceased illegally selling franchises, he did have Plaintiff enter into a Subcontractor Agreement for which commissions were due Plaintiff. Jebri's Exhibits A and B are the EZ Wireless Subcontractor Agreement outlining 2006 Commission Plan and the EZ Wireless Subcontractor Agreement outlining 2005 Commission Plan, respectively. Jebri's Exhibit C was the Jebri's summary of commissions which he computed were due, and Exhibits D through L are copies of commission checks paid to Plaintiff under the Agreement with EZ Wireless. There was no dispute as to Plaintiff having entered into an Agreement by which commissions were due from EZ Wireless, Jebri's company. The right to the commissions, and any damages flowing from such commissions were not dependent upon whether Jebri sold a franchise or a Subcontractor Agreement to Plaintiff. The dispute in this case was whether Plaintiff was properly paid the commissions he was due, or whether Jebri misrepresented the amount of commissions due and diverted monies due Plaintiff to himself or one of his companies. Whether it was in the context of an "illegal franchise" is not material to

the decision fo the court.

   Whether Jebri illegally sold a franchise to this Plaintiff or promised to and then switched to a Subcontractor Agreement makes no material difference with respect to Plaintiff's right to receive commissions under the Agreement. As stated in the Motion, Jebri admitted to illegally selling franchise agreements, and as set forth in the record, Jebri did so after receiving advice of counsel that it was illegal.

   Jebri's contention that there was not a sale of an illegal franchise to Plaintiff is also inconsistent with Jebri acknowledging at trial that the state court has issued a restitution order in the amount of $73,342.46 which is asserted to be nondischargeable. Transcript 7:1-7. The restitution order relates to franchises illegally sold by Jebri. Transcript 7:8-12, 17-18, and testimony of Jebri that he illegally sold franchises after obtaining the advice of counsel. Jebri sought to obtain a dismissal of the complaint at the time of trial on the grounds that he was already obligated to Plaintiff for $73,342.46 in restitution damages for selling an illegal franchise and that such damages for selling an illegal franchise were all the damages to which Plaintiff was entitled. To the extent that the determination that Jebri illegally sold a franchise to Plaintiff is material to the commissions owed to Plaintiff, clear, unequivocal evidence, including admissions by Jebri, support such a determination. However, the court's ruling is not dependent on Jebri having sold an illegal franchise.

   No sufficient grounds have been established for a new trial or reopen the judgment on the issue of whether the court's findings

11

state that a franchise was sold to Plaintiff or there was a Subcontractor Agreement under which Plaintiff was entitled to the commissions in dispute. The Motion is denied on this ground.

### Plaintiff's Burden of Proof

As amplified at the hearing, Jebri also contends that the Plaintiff did not carry his burden of proof. Jebri has also made statements that the court shifted the burden to Jebri to prove that alleged sales did not exist. These contentions are incorrect.

As stated at trial, the Plaintiff had the burden of proof for his case by a preponderance of the evidence. As determined by the court, the Plaintiff carried that burden for $141,870.08 of damages. The court determined that the Plaintiff did not carry his burden of proof for the additional $1,370,848.97 in damages sought by Plaintiff. The court accepted Jebri's statement of the amount of commissions due per transaction, using the amounts set forth in Jebri's exhibits.

The court did find persuasive the evidence of transactions for which compensation had not been paid which had been prepared while the Plaintiff had access to its business records as a Subcontractor for EZ Wireless. The testimony at trial is that the computer system and records from which much of the information was produced had been taken by Jebri when the Plaintiff ceased being a subcontractor for EZ Wireless. Exhibit 27 was prepared for the California Department of Justice when it was investigating Jebri for the illegal sale of franchises. The substance of Jebri's argument on the burden of proof is that he doesn't believe the testimony and methodology, so his testimony is more credible. The court did not find such to be the case.

1 | To the extent that Jebri argues that a new trial should be granted or the judgment reopened because the court erroneously shifted the burden of proof to Jebri, the Motion is denied.

**CONCLUSION**

As discussed in MOORE'S FEDERAL PRACTICE - CIVIL § 59.13, MATTHEW BENDER AND COMPANY, there are no fixed standards which apply to a new trial, and the general grounds are that (1) the verdict is against the clear weight of the evidence, (2) the damages are excessive, (3) the trial was not fair, or (4) substantial errors occurred in the admission or rejection of evidence or that giving or refusal of instructions. False testimony of a witness may be grounds for a new trial if the falsity of the testimony is established. Id., § 59.13[c][ii]. None of those grounds have been shown in this adversary proceeding.

Jebri made a strategy decision as to what evidence he was going to produce at trial, specifically electing not to use third-party Sprint records for his case or rebuttal. Now, regretting that decision he seeks to retry the case and use a different strategy. Regret and a desire to implement muliple strategies in a series of trials is not grounds for granting a new trial.

Because the motion has failed to established a basis for granting a new trial, the motion is denied. This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52 and Fed. R. Bank. P. 7052.

Dated: September 30, 2011

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service. The parties listed below will be served a separate copy of the attached document(s).

---

Clifford Stevens
PO Box 20
Stockton, CA 95201-3020

Richard Andersen
1301 K St #E
Modesto, CA 95354-0932

Thomas O. Gillis
1006 H St #1
Modesto, CA 95354

Eddie Jebri
PO Box 579670
Modesto, CA 95367

Waylet Jebri
PO Box 579670
Modesto, CA 95367

Gary Farrar
PO Box 576097
Modesto, CA 95357

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814